IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 3:22-CR-42-SA

HENRY WEAVER  DEFENDANT

### ORDER

Henry Weaver has filed three separate Motions [163, 164, 165] that are now before the Court. In addition to asking the Court to reconsider a portion of a previous ruling, he has filed two separate requests for exclusion of evidence *in limine*. The Court will address the requests in turn.

*I.  Motion to Reconsider [165]*

By way of introduction, on January 5, 2024, the Court entered an Order and Memorandum Opinion [149] addressing various matters associated with this case. The Court sees no need to fully recite the underlying facts and its analysis but notes that it ultimately vacated both of Weaver's convictions and reset this matter for trial. However, as part of that ruling, the Court rejected Weaver's request to dismiss Count One of the Superseding Indictment [19]. It is that portion of the ruling with which Weaver now takes issue. Particularly, Weaver contends that "Postal Inspector Charlie Tutor made inconsistent statements . . . that require dismissal of the indictment." [165] at p. 1-2. Weaver points to four areas of purported inconsistencies:

> A. Statements concerning when Tutor met the postal carrier, Benjamin Jones.
>
> B. Tutor incorrectly told the grand jury that Weaver "lived in the area" of the alleged assault.
>
> C. Tutor told the grand jury that Jones had to be moved to another route because of threats against him; when in fact, he was moved to cover for another postal carrier.

> D. Tutor told the grand jury that this was a "he said/he said" incident, and that there were no witnesses with information, when in fact, there were several persons with knowledge that Tutor did not interview.

[165] at p. 2-3.

Many of these issues were addressed in the Court's previous Order and Memorandum Opinion [149]. The Court sees no need to address them again. *See*, *e.g.*, *United States v. Moyo*, 2008 WL 695249, at *1 (E.D. La. Mar. 12, 2008) ("The mere fact that Defendant disagrees with this Court's ruling is not grounds for a motion to reconsider."); *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (noting that a motion to reconsider is "not the proper vehicle for rehashing evidence").

To the extent that the Court did not previously address any of these arguments, the Court notes that "[d]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *United States v. Cessa*, 861 F.3d 121, 141 (5th Cir. 2017) (citations and internal quotation marks omitted). Weaver's arguments do not rise to the level so as to warrant the request he now seeks. In other words, the Court is not left with any concern that the grand jury's decision to indict was substantially influenced by any purported violations of his rights. Weaver's issues with Tutor's testimony may be ripe for cross-examination, but they do not warrant dismissal of the Count against him. The Motion to Reconsider [165] is DENIED.

## II. Motions in Limine

As noted above, Weaver has filed two separate Motions *in Limine* [163, 164]. His first Motion [163] seeks exclusion of certain non-expert testimony. His second Motion [164] concerns Rule 404(b) evidence that Weaver anticipates will be an issue at trial.

"Although neither the Federal Rules of Evidence nor the Federal Rules of Criminal Procedure 'explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials.'" *United States v. Crawford*, 2019 WL 2077035, at *1 (N.D. Miss. May 10, 2019) (quoting *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984)). "The purpose of a motion *in limine* is to prohibit opposing counsel 'from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.'" *United States v. Crandell*, 2022 WL 570453, at *1 (N.D. Miss. Feb. 24, 2022) (quoting *United States v. Beasley*, 2020 WL 6438255, at *1 (S.D. Miss. Nov. 2, 2020); *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n. 1 (5th Cir. 1977)). Importantly, "[a]s is true with motions *in limine* in civil cases, a motion *in limine* in a criminal case should only be granted if the challenged evidence is shown to be inadmissible on all possible grounds." *Crawford*, 2019 WL 2077035 at *1.

    A.    *First Motion in Limine [163]*

In his first Motion [163], Weaver seeks to limit the anticipated testimony of Charlie Tutor, an Inspector with the United States Postal Inspection Service. In particular, Weaver takes issue with Tutor's "opinion that the underlying offense was associated with shipping drugs through the mail." [163] at p. 1. For context, the Court notes Tutor's relevant testimony from the first trial:

> Q.    Okay. Let me ask you this question. Are drugs shipped through the mail sometimes?
>
> A.    A lot of times.
>
> Q.    How are you familiar with that?

A. I work -- that's -- probably 90 percent of my work is drug related.

Q. Okay. So drugs shipped through the mail, that's on your side of the house so to speak, isn't it?

A. Yes, sir.

Q. Okay. Now, what percentage of time do you say that you spend on drug packages shipped through the mail?

A. Probably 90 percent of my time.

Q. And how do you know that drug packages get shipped through the mail?

A. Because I see -- I see thousands of them, and I get contacted a lot by local post offices. Officers from local police departments will contact me also and say, "Hey, we've got addresses that the CI said is getting drugs through the mail." So multiple ways.

Q. So I understand that sometimes a post office may identify packages containing drugs, and you get that and investigate it; correct?

A. Correct.

Q. Are drugs often -- sometimes stolen from these packages?

A. Yes, sir.

Q. So how do you know that this package had drugs in it and something has been stolen from it?

A. Because we'll get normally a variety of packages that are empty, and you can tell they were cut with a knife. So we know somebody cut them open. And they'll get shipped to, say, Batesville, but they're actually going to California or somewhere.
And then we look at the characteristics of the package, which where it's coming from and where it's going, if it's a drug source area or known drug area. And, also, some of those packages will still have -- like, the vacuum-sealed bags that contained the drugs will still be in there with residue and that type of thing.

4

> Q. Can you sometimes smell where drugs have been in a package?
>
> A. If it's marijuana.
>
> Q. Okay. And so fair to say that not only are drugs shipped through the mail, but sometimes drugs are stolen in the process of shipment?
>
> A. Correct. We've also caught people doing it, like, on camera.
>
> . . .
>
> Q. All right. Is it fair to say that your depth of knowledge concerning stolen packages comes from what you have witnessed along with information you've gathered over the years from your colleagues in Memphis?
>
> A. Yes, sir.
>
> Q. Based on your experience as a postal inspector, if drugs were shipped into North Mississippi from out of state, where's the most likely spot they would be stolen from the mail?
>
> A. At the plant in Memphis or the airport hub there.
>
> Q. And based on your investigation in this case, do you have any reason to believe that Ben Jones would have stolen any mail package at all?
>
> A. No, sir.

[156] at p. 13-16.

At the first trial, Weaver objected to the above-referenced testimony on the basis that it constituted expert testimony and that, since Tutor was not designated as an expert, he was not qualified to testify on those topics. At that time, the Court overruled the objection.

In his current filing, Weaver's objection to Tutor's testimony is two-fold. He (again) contends that Tutor's testimony impermissibly crosses into the area of expert testimony. He also objects on the basis that the testimony is speculative. To support his position, Weaver cites two

Fifth Circuit cases. He first relies on *United States v. Haines*, wherein the Fifth Circuit held: "We have recognized that in the context of drug conspiracies, drug traffickers' jargon is a specialized body of knowledge, familiar only to those wise in the ways of the drug trade, and therefore a fit subject for expert testimony." 803 F.3d 713, 727 (5th Cir. 2015) (citations and quotation marks omitted). Weaver also relies on the Fifth Circuit's holding in *United States v. Garcia* for the proposition that "expert testimony is required to state 'the significance of certain conduct or methods of operation unique to the drug business so long as the testimony is helpful and its relevance is not substantially outweighed by the possibility of unfair prejudice or confusion.'" [163] at p. 2 (quoting *United States v. Garcia*, 86 F.3d 394, 400 (5th Cir. 1996)).

Neither of these cases warrant exclusion of Tutor's testimony. The Court finds the circumstances of *Haines*—which again involved drug traffickers' jargon—to be wholly distinguishable from testimony as to Tutor's personal knowledge and experience gained while working as a Postal Inspector. The Court further finds *Garcia* to be inapplicable because it finds Tutor's testimony to be relevant and helpful to the jury and that the same is not substantially outweighed by the possibility of unfair prejudice or confusion.

As to speculation, Weaver argues that "Tutor should additionally not be allowed to testify as to this because it is admittedly speculative, and there is no evidence that any package containing drugs existed. . . Tutor testified at trial that the government did not know what mail package was at issue; therefore, he clearly could not state drugs were at issue." [163] at p. 2. The Government counters by arguing that Tutor's anticipated testimony is based upon factual observations he has made as a Postal Inspector.

To the extent that Tutor's testimony stays within the parameters of his previous testimony, the Court agrees with the Government's position. If Tutor's testimony goes beyond those

6

parameters, the Court will address any objections in the context of trial. *See King v. Cole's Poultry, LLC*, 2017 WL 532284, at *1 (N.D. Miss. Feb. 9, 2017) ("Evidentiary rulings should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context.") (citations and quotation marks omitted).

The Motion [163] is DENIED.

B.  *Second Motion in Limine [164]*

Weaver's second Motion *in Limine* [164] concerns evidence of other acts that the Government has indicated its intent to introduce via Rule 404(b). The Motion [164] concerns three different categories of evidence, which Weaver frames as follows:

> A.  evidence of Weaver's "previous drug convictions;"
>
> B.  "evidence related to drugs found in the defendant's possession" during a traffic stop by the Batesville Police Department on January 12, 2022 (now found to be an illegal stop); and
>
> C.  "drug trafficking evidence" obtained when Weaver was arrested for the instant offense on April 28, 2022.

[164] at p. 1.[1]

"Under the Federal Rules of Evidence, extrinsic evidence of other crimes, wrongs, or acts is inadmissible as proof of character but may be admitted to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Maguina*, 2023 WL 3563014, at *1 (5th Cir. May 19, 2023) (per curiam) (quoting FED. R. EVID. 404(b)(2) and citing FED. R. EVID. 404(b)(1); *United States v. Cockrell*, 587 F.3d 674, 678 (5th

---

[1] As required by Rule 404(b)(3), the Government provided written notice of its intent to seek introduction of these three categories of evidence. In that same written correspondence, the Government provided notice of its intent "to use evidence of the defendant's previous firearms related convictions as well as evidence related to the firearm found in the defendant's possession by Batesville P.D. at the time of the traffic stop on January 12, 2022, for the purpose of proving opportunity or any other applicable purpose under the rule." Weaver has not sought exclusion of this evidence, and the Court therefore will not address it.

Cir. 2009)). The Fifth Circuit has articulated a two-part test to be applied in determining whether evidence of other crimes is admissible under Rule 404(b). *United States v. Arnold*, 467 F.3d 880, 884 (5th Cir. 2006) (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978)). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403." *Id*. (quoting *United States v. Willis*, 6 F.3d 257, 260 (5th Cir. 1993)). The second prong of the test requires the Court to consider multiple factors, including "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017) (quoting *United States v. Smith*, 804 F.3d 724, 736 (5th Cir. 2015); *United States v. Kinchen*, 729 F.3d 466, 473 (5th Cir. 2013)). Additionally, the Court should take into account "the overall prejudicial effect of the extrinsic evidence." *Id*. (citing *Beechum*, 582 F.2d at 917).

Here, the Government contends that the three separate categories of extrinsic evidence outlined above are admissible to show motive. For context, the Court notes the Government's theory of the case, as articulated in the Government's most recent filing (and consistent with its position throughout the pendency of this case):

> Many people have packages that get lost in the mail, sometimes valuable packages. Most people don't threaten their mail carrier at gun point when a package doesn't arrive as expected. However, it is not unreasonable to think that a drug dealer might threaten his mail carrier when a valuable shipment of drugs is missing. It provides motive for the underlying crime of assault and the government is allowed to prove motive to the jury. In this case, the government's theory is that Weaver is a drug dealer who was missing a package of drugs. Thinking the package was stolen by his mail carrier, Weaver and his associates threatened Jones at gunpoint. Weaver has a long history of drug dealing, as evidenced by his previous convictions, as well as current events that show that he was still

8

>dealing drugs at the time of the assault, that is, the possession of dealer amounts of drugs and drug dealing equipment on January 12, just three months prior to the assault, and the possession of more drugs and a digital scale on April 28, just five days after the assault.

[170] at p. 2.

In accordance with this theory of the case, the Government contends that the challenged evidence illustrates Weaver's motive to commit the alleged threat against Ben Jones, the postal worker. The Court will separately apply the applicable test as to each category of evidence at issue.

    *i.*    *Previous Drug Convictions*

The Government's written correspondence notified Weaver of its intent to "use evidence of the defendant's previous drug convictions" at trial. [164], Ex. 3 at p. 1. Although the specific convictions are not identified, the letter does refer to prior convictions from Mississippi, Oklahoma, and Wisconsin. Additionally, due to the unusual procedural posture of this case—with Weaver having previously been tried on the two Counts of the Superseding Indictment [19]—the Court has the benefit of documents related to Weaver's prior convictions that were introduced at the first trial to establish his status as a felon for the felon in possession of a firearm charge. *See* [59]. Through a review of those documents, the Court has been able to identify the following convictions which it *assumes* are the drug convictions on which the Government intends to rely:

    (1)    August 24, 2001: Sale of Cocaine - Quitman County Circuit Court, Marks, Mississippi;

    (2)    May 18, 2010: Possession of Cocaine with Intent - Racine County Circuit Court, Racine, Wisconsin

    (3)    April 15, 2011: Trafficking in Illegal Drugs - Cocaine - Lincoln County District Court, Chandler, Oklahoma; and

    (4)    May 7, 2019: Possession of More than 10 Grams but Less than 30 Grams of Cocaine - Panola County Circuit Court, Batesville, Mississippi.

Applying the two-part test, the Court agrees with the Government's position that this extrinsic evidence goes to motive—that is, it supports the Government's theory of the case that Weaver threatened the postal worker because he was missing a drug package. Thus, the Court turns to the second prong, which requires that the evidence "possess probative value that is not substantially outweighed by its undue prejudice . . . and meet the other requirements of [Rule] 403." *Juarez*, 866 F.3d at 627. As noted above, the Court should consider "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Id*. (citations omitted).

The Court finds the Government's need for the evidence to be rather high. At the first trial, the evidence in support of the Government's case on this Count was essentially Ben Jones' (the victim) testimony and Tutor's testimony. The event was not captured on video. And the Court does agree with the Government's position that evidence of motive is important in this case, as threatening a postal worker is not a typical response to a delayed mail package. Ultimately, the Court finds this factor weighs in favor of the Government.

The next factor is the similarity between the extrinsic and charged offenses. *Id*. at 628. "As with the overall balancing act under Rule 403, the district court must assess the similarity of the offenses and weigh enhanced probative value against the prejudice that almost certainly results when evidence of prior misconduct is admitted." *Id*. (citing *Beechum*, 582 F.2d at 915). The similarity between the drug offenses and threatening a postal worker is low. The similarity (or lack thereof) can "cut both ways" because "similarity between the prior and charged offenses increases both the probative value and prejudicial effect of extrinsic evidence" and "if the offenses are mostly dissimilar or only share one element, the extrinsic offense may have little probative value

to counterbalance the inherent prejudice of this type of evidence." *Id*. (citing and quoting *United States v. Hernandez-Guevara*, 162 F.3d 863, 872 (5th Cir. 1998)); *Beechum*, 582 F.2d at 915 (quotation marks omitted). Taking all of this into account, the Court finds that this factor does not weigh heavily either way.[2]

The third factor concerns the amount of time separating the offenses. "Probative value is 'augmented by a lack of temporal remoteness' between the offenses." *Id*. (quoting *Beechum*, 582 F.2d at 917). With that being said, "the amount of time that has passed since the previous conviction is not determinative." *Arnold*, 467 F.3d at 885.

In *Arnold*, a 2006 case, the Fifth Circuit noted "[w]e have upheld the admission of Rule 404(b) evidence where the time period in between was as long as 15 and 18 years." *Id*. However, the Fifth Circuit has more recently (in 2017) noted that "[t]his Court has found that evidence of misconduct committed less than three years prior to the charged crime is admissible, while suggesting that ten years may be too remote." *Juarez*, 866 F.3d at 628 (citing *United States v. Adair*, 436 F.3d 520, 527 (5th Cir. 2006); *United States v. Grimes*, 244 F.3d 375, 384-85 (5th Cir. 2001)). Since that time, other district courts in this Circuit have held that "[t]emporal remoteness of extrinsic evidence may weaken its probative value, but the age of an act is not a bar under Rule 404(b)." *See*, *e.g.*, *United States v. Pea*, 2021 WL 1566943, at *3 (W.D. La. Apr. 21, 2021).

This factor obviously impacts Weaver's convictions differently. For instance, the first listed conviction occurred over twenty years prior to the offense at issue in this case, whereas Weaver's most recent conviction was made final approximately three years prior to the conduct at issue here and approximately five years prior to the upcoming trial date.

---

[2] The Court also notes that "[t]he extrinsic act evidence need not be similar to the charged offense when the extrinsic evidence is introduced to show motive." *Kinchen*, 729 F.3d at 472 (citing *Beechum*, 582 F.2d at 911).

11

The last factor concerns limiting instructions. "While limiting instructions cannot eliminate prejudicial effect, they can to a certain extent 'allay . . . the undue prejudice engendered by' extrinsic evidence." *Juarez*, 866 F.3d at 628 (quoting *Beechum*, 582 F.2d at 917). The Court will certainly take steps to attempt to eliminate the prejudicial effect of any extrinsic evidence introduced in the case.

In addition to the factors, the Fifth Circuit has explained that it evaluates district court's decisions on this issue under a "commonsense assessment of all the circumstances surrounding the extrinsic offense." *Id*. at 629 (quoting *Beechum*, 582 F.2d at 914). "Such circumstances generally include the nature of the prior offense and the likelihood that the 404(b) evidence would confuse or incite the jury." *Id*.

Taking all of these factors into account, the Court finds that some, but not all, of the convictions should be admitted. The most recent of the convictions—the 2019 conviction for possession of cocaine—was finalized approximately three years prior to the charged conduct in this case. This proximity is close in time to the subject conduct at issue here. The Court also finds that the 2011 trafficking conviction from Oklahoma is admissible pursuant to Rule 404(b)(2). The Court is cognizant that the conviction was finalized approximately 11 years prior to the date of the charges at issue here (and approximately 13 years prior to the upcoming trial) and is thus beyond the ten year benchmark referenced in *Juarez*. While the temporal proximity of this conviction is more attenuated, the Court again emphasizes its conclusion that the Government's need for the evidence is high, in light of the circumstances of the charged offense. The Court also notes that this offense was a drug trafficking conviction, as opposed to simple possession, which increases its probative value as it pertains to the Government's theory of motive. The 2011 trafficking conviction will be admitted pursuant to Rule 404(b)(2). The probative value of those two

convictions is extremely high and is not substantially outweighed by the risk of undue prejudice to Weaver.

However, the Court finds that the two remaining convictions, the 2010 conviction in Wisconsin and the 2001 possession conviction in Mississippi, should be excluded. The temporal proximity of those convictions is even further attenuated from the charged offense, and the Court additionally finds that the Government's need for those convictions is diminished in light of the two more recent convictions being admitted. The admission of these convictions would enhance the potential for undue prejudice to a point that, in the Court's view, it substantially outweighs the probative value of the evidence. The 2010 conviction and 2001 conviction will therefore be excluded.

In concluding that some but not all of Weaver's past drug convictions may be admitted pursuant to Rule 404(b)(2), the Court notes a relatively recent decision from another district court in this Circuit. *See United States v. Felton*, 2019 WL 660562 (W.D. La. Feb. 15, 2019). There, the defendant was indicted on multiple drug trafficking charges including conspiracy to distribute and possession with intent to distribute methamphetamine. *Id*. at *1. The Government sought to utilize Rule 404(b)(2) to introduce two prior felony drug convictions: (1) possession of cocaine with intent to distribute from 2000; and (2) possession with intent to distribute schedule II controlled dangerous substances in 2003. *Id*. at *2. The district court ultimately held:

> Felton's prior convictions were in 2000 and 2003. The last conviction resulted in a sentence of twenty (20) years of imprisonment and a February 4, 2015 release date. Thus, the government argues that Felton's prior convictions are not so remote as to negate their relevance and admissibility pursuant to 404(b).
>
> The Court finds that because Felton has plead not guilty to the indictment, intent and knowledge are at issue. Thus, extrinsic evidence is relevant because it will lessen the likelihood that Felton was without knowledge of the charged offense. Furthermore,

13

> Felton's drug convictions are probative of the fact that he had the requisite intent and knowledge to participate in a drug trafficking operation. However, the Court finds that the 2000 conviction for possession of cocaine is *too remote*, and thus will be excluded except for impeachment purposes as discussed below. Finally, this Court can instruct the jury regarding the limited purpose for which it can consider the evidence.

*Id*. at *2-3 (emphasis added).

Although not factually analogous, *Felton* provides an example of when one prior conviction is admissible, but another is not.

Furthermore, in permitting the Government to introduce evidence of the two prior convictions, the Court will provide a limiting instruction in the final instructions provided to the jury at the close of the case. Additionally, the Court will provide a limiting instruction to the jury at the time the evidence is introduced during trial. The Fifth Circuit has repeatedly advised district courts that limiting instructions are crucial when this type of evidence is admitted. *See*, *e.g.*, *United States v. Flores*, 2023 WL 5703612, at *4 (5th Cir. Sept. 5, 2023) (per curiam) ("Finally, *and critically*, the district court gave the jury an appropriate limiting instruction.") (citations omitted; emphasis added); *Juarez*, 866 F.3d at 629 (noting that district court "instructed the jury more than once regarding the limited purpose of the 404(b) evidence, both before the Government began its presentation of that evidence, and during the final jury instructions").

The Court will permit the Government to introduce the 2019 conviction and 2011 conviction referenced above but will not permit introduction of the other two convictions. To the extent there are other convictions that the Government wishes to introduce, it should make the Court aware of them prior to attempting to introduce them—or making any reference to them—in front of the jury.

> ii.  *Evidence Related to the January 12, 2022 Traffic Stop*

The Government has also indicated its intent to pursue introduction of "evidence related to the drugs found in the defendant's possession by Batesville P.D. at the time of the traffic stop on January 12, 2022." [164], Ex. 3 at p. 1.

The January 12, 2022 traffic stop has been a point of extensive contention and litigation in this case. The traffic stop and the evidence seized therefrom was the basis for Count Two of the Superseding Indictment [19]. On January 5, 2024, the Court entered an Order and Memorandum Opinion [149], wherein it held that the traffic stop was invalid from its inception because it violated Weaver's Fourth Amendment rights. More specifically, the Court held that the Officer who initiated the stop lacked probable cause to initiate the stop and therefore suppressed all evidence obtained from the traffic stop as fruit of the poisonous tree.

Now, the Government takes the position that "while the government may not be able to use that evidence in prosecuting Weaver for charges arising out of the traffic top, the fact remains that Weaver was in possession of drugs and digital scales that night. Possession of those items is relevant and admissible under Ruel 404(b) for the current charge of assaulting a federal employee." [170] at p. 4.

The Government cites no authority to support its contention that evidence obtained via an illegal traffic stop—and therefore suppressed—can nevertheless be introduced in support of another Count. The Court finds that the introduction of this evidence would be inappropriate. To admit that evidence under the circumstances would serve to diminish Weaver's constitutional rights, which (again) the Court has previously found were violated when the traffic stop was initiated.

To the extent Weaver now seeks exclusion of evidence obtained via the traffic stop, his request is granted. The Government will not be permitted to introduce any evidence from the January 12, 2022 traffic stop, and there shall be no reference to the stop whatsoever at trial.[3]

### iii. *Evidence obtained at the time of arrest*

The last category of evidence concerns drugs and a scale that were found in Weaver's possession when he was arrested. For context, the alleged assault occurred on April 23, 2022. Weaver was arrested—with the drugs and scale—five days later on April 28, 2022.

Although this evidence pertains to actions that occurred subsequent to the alleged assault, the Government contends that the evidence is nevertheless admissible pursuant to Rule 404(b)(2)—as it still is probative of Weaver's motive to commit the assault. Notably, subsequent actions may be admitted pursuant to Rule 404(b)(2). *See*, *e.g.*, *United States v. Peterson*, 244 F.3d 385, 392 (5th Cir. 2001) ("Our prior decisions clearly allow for evidence of 'bad acts' subsequent to the subject matter of the trial of the purpose of demonstrating intent.") (citing *United States v. Catano*, 553 F.2d 497, 499-500 (5th Cir. 1977); *Roe v. United States*, 316 F.2d 617, 623 (5th Cir. 1963)).

Applying the two-pronged test, the first prong is satisfied as the evidence goes to show motive to support the Government's theory of the case. As previously addressed herein, under the second step of the inquiry, the probative value of the evidence must not be "substantially outweighed by undue prejudice." *United States v. Wallace*, 759 F.3d 486, 493 (5th Cir. 2014). This is where, in the Court's view, the Government's argument falls short. Although the drugs and scale may have *some* probative value, the Court finds that probative value to be substantially outweighed

---

[3] As noted above, Weaver has not filed a motion seeking exclusion of Weaver's possession of a firearm on the night of January 12, 2022. However, the manner in which that firearm was discovered is necessarily intertwined with the drug evidence obtained as a result of the stop. Consequently, the Court's ruling as to the drug evidence also extends to the firearm obtained during the stop.

by the risk of unfair prejudice. Although cognizant that the arrest occurred relatively soon after the alleged assault (five days), the introduction of this evidence is simply not appropriate—particularly considering that the charged offense is for an alleged threat of a postal worker. Its prejudicial effect substantially outweighs its probative value.

To the extent Weaver seeks exclusion of evidence seized at the time of his arrest on April 28, 2022, the request is granted.

*Conclusion*

For the reasons set forth above, Weaver's Motion to Reconsider [165] is DENIED. The case will proceed to trial on Count Two of the Superseding Indictment [19]. Weaver's first Motion *in Limine* [163] is DENIED. His second Motion *in Limine* [164] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this the 9th day of February, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE